4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCIS W. LABRACHE, JR.,    :    CONSOLIDATED UNDER
                         :    MDL 875
     Plaintiff,           :
                         :
     v.                  :
                         :
A-C PRODUCT LIABILITY TRUST,  :    E.D. PA CIVIL ACTION NO.
ET AL.,                   :    2:09-30218-ER
                         :
     Defendants.         :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.           September 4, 2015

This case was transferred in October 2009 from the United State District Court for the Northern District of Ohio to the United States District Court for the Eastern District of Pennsylvania, where it became part of the consolidated asbestos products liability multidistrict litigation (MDL 875). The case was assigned to the Court's maritime docket ("MARDOC"). Plaintiff Francis W. Labrache, Jr. ("Plaintiff" or "Mr. Labrache") was exposed to asbestos while working aboard various ships. Plaintiff asserts that he developed an asbestos-related illness as a result of his exposure to asbestos aboard those ships.

For the reasons that follow, the Court will deny Defendants' Motion for Summary Judgment (Judicial Estoppel).

## I.  BACKGROUND

On or about February 1, 2001, Plaintiff brought claims
against various defendants, including shipowners represented by
Thompson Hine LLP ("Defendants" or the "Thompson Hine
Shipowners"). By way of Order dated March 14, 1997, Judge
Charles Weiner[1] had already dismissed those claims
administratively (before they were filed), leaving open the
possibility for the action to be pursued at a later, unspecified
date.[2] Approximately nine years after Plaintiff filed his claims,

---

[1]     Judge Weiner presided over MDL 875 from its inception
in 1991 until his passing in 2005. In 2005, Judge James Giles
was designated to preside over MDL 875, where he remained until
his resignation from the bench in 2008. In October 2008, Judge
Eduardo Robreno, the undersigned, was appointed to succeed Judge
Giles, and he has presided over MDL 875 since that date.

[2]     On May 2, 1996, Judge Weiner administratively
dismissed all pending MARDOC claims without prejudice, noting
that the claimants had "provide[d] no real medical or exposure
history," and had been unable to do so for months. In re
Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL
239863, at *1-2 (E.D. Pa. May 2, 1996). Judge Weiner also
ordered that these "asymptomatic cases" could be activated if
the plaintiffs began to suffer from an impairment and could show
(1) "satisfactory evidence [of] an asbestos-related personal
injury compensable under the law," and (2) "probative evidence
of exposure" to a defendant's products. Id. at *5. On March 14,
1997, Judge Weiner applied that dismissal order to the instant
case (and all future MARDOC cases that had not yet been filed).
In 2002, the MDL Court ordered that administratively dismissed
cases remain active for certain purposes (e.g., entertaining
settlement motions and orders, motions for amendment to the
pleadings, etc.), and in 2003, clarified that the administrative
dismissals were "not intended to provide a basis for excluding
the MARDOC claimants from participating in settlement programs
or prepackaged bankruptcy programs[.]" In re Am. Capital Equip.,
296 Fed. App'x 270, 272 (3d Cir. 2008) (quoting In re Asbestos

on October 15, 2009, the MDL Court reinstated Plaintiff's asbestos action, which had been dismissed by Judge Weiner in 1997. Thereafter, on September 19, 2011, Plaintiff filed for bankruptcy pursuant to Chapter 7 of the bankruptcy code in the United States Bankruptcy Court for the Middle District of Florida. The bankruptcy case was closed approximately three months later, on December 21, 2011. After learning of Defendants' present motion for summary judgment (which was filed in November 2012), the trustee to the bankruptcy action sought approval from the bankruptcy court for Plaintiff's current counsel (The Jaques Admiralty Law Firm) to act as special counsel to the bankruptcy trustee, to represent the interest of the bankruptcy estate. (ECF No. 138.) On April 26, 2013, the bankruptcy court issued an order approving Plaintiff's counsel as special counsel to the bankruptcy trustee. (ECF No. 138-1.) A summary of this timeline of events is as follows:

- March 1997 - Asbestos action administratively dismissed
- February 2001 - Asbestos action filed
- October 2009 - Asbestos action reinstated
- September 2011 - Bankruptcy action filed
- December 2011 - Bankruptcy action closed
- November 2012 – Defendant's present motion for summary judgment filed
- April 2013 – Bankruptcy court approved Plaintiff's counsel to act as special counsel to the bankruptcy trustee

Prods. Liab. Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

The Thompson Hine Shipowners have moved for summary judgment, arguing that (1) Plaintiff's claims are barred by way of judicial estoppel because he failed to disclose the asbestos action as an asset in his bankruptcy filing, and (2) Plaintiff cannot pursue the asbestos action because it is now owned by the bankruptcy estate.

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party.

4

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B.     The Applicable Law

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals

---

[3]     "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." Ryan Operations, 81 F.3d at 358 n.2.

for the Third Circuit. <u>Various Plaintiffs v. Various Defendants</u>
(<u>"Oil Field Cases"</u>), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)
(Robreno, J.). Therefore, the Court will apply Third Circuit law
in deciding the issues raised by Defendants' motion.

**III. THE PARTIES' ARGUMENTS**

    A. <u>Judicial Estoppel</u>

        Defendants contend that Plaintiff's claims are barred
on grounds of judicial estoppel. Specifically, they contend that
Plaintiff took irreconcilably inconsistent positions in his
bankruptcy proceeding and the instant proceeding. Defendants
state that Plaintiff concealed the existence of his asbestos
claims when filing for bankruptcy by not reporting them as
pending or likely claims on Schedule B ("Personal Property"),
while simultaneously asserting such claims in the current and
then-pending asbestos action. They further assert that a finding
of bad faith is warranted because Plaintiff had knowledge of the
asbestos claims at the time that he filed for bankruptcy and had
a motive to conceal the claims from the Bankruptcy Court (i.e.,
to keep any proceeds of the claims while reducing the amount of
assets available for distribution amongst the creditors - a
motive Defendants assert is common to nearly all debtors in
bankruptcy). Finally, Defendants contend that no lesser remedy
is warranted because the sanction of barring the asbestos claims

is necessary to (1) keep Plaintiff from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Plaintiff contends that the asbestos claims are not barred on grounds of judicial estoppel because Defendant cannot satisfy the requirements necessary for such a barring. Specifically, Plaintiff asserts that Defendants bear the burden of establishing bad faith, but have no evidence that Plaintiff acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filing.

B.  Real Party in Interest/Standing

In the alternative, Defendants contend that Plaintiff has no right to pursue the claims because the claims no longer belong to Plaintiff and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Plaintiff did not report the asbestos claims as assets in the bankruptcy filing, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee can administer the claims.

Defendants also argue that because Plaintiff did not reveal the asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing

those claims back to Plaintiff through abandonment of any
remaining  assets not administered (as would normally happen
pursuant to 11 U.S.C. § 554). As such, Defendants assert that,
even though the bankruptcy action has closed, the rights to the
asbestos claims did not revert back to Plaintiff upon that
closure and instead remain with the trustee, such that Plaintiff
may not now pursue them.

Plaintiff asserts that, because the asbestos claims
were dismissed during the entire pendency of the bankruptcy
action, they were never assets of the bankruptcy estate –
regardless of whether or not Plaintiff disclosed them. In short,
Plaintiff argues that the bankruptcy estate could not have an
asset that was not in existence at the time of the bankruptcy.
(Plaintiff does not concede in this portion of his brief that
the asbestos claims were reinstated by the MDL court prior to
the filing of his bankruptcy action – although he does
acknowledge this fact elsewhere in his brief.)

Plaintiff asserts in a footnote that, even if
Plaintiff's claims could be properly barred under the law, the
Court should not make such a ruling because it would preclude
the creditors to the bankruptcy action from recovering fully on
the debts owed to them.

In a subsequent filing (ECF No. 138), Plaintiff
informs the Court (with proof) that he (through the bankruptcy

trustee) has had the bankruptcy action reopened – and has obtained approval from the bankruptcy court (sought by the trustee to the bankruptcy action) to employ Plaintiff's asbestos counsel (the Jacques Admiralty Law Firm) as special counsel to the bankruptcy trustee in the bankruptcy action. (ECF No. 138-1.) As such, Plaintiff appears to indicate that the bankruptcy trustee is working in concert with Plaintiff's asbestos counsel to enable recovery for bankruptcy creditors.

In their supplemental reply brief (ECF No. 139), Defendants argue that Plaintiff's reopening of the bankruptcy action (and obtaining approval for his asbestos counsel (the Jacques Admiralty Law Firm) to act as special counsel to the trustee in the bankruptcy action) does not cure Plaintiff's standing deficiency because it is still Plaintiff pursuing the action when only the bankruptcy trustee has standing to pursue the action. Specifically, Defendants assert that, "[w]hile Plaintiff is correct that the creditors of the Plaintiff's bankruptcy estate are the proper beneficiaries of any proceeds resulting from the instant litigation, Plaintiff still has not cured the fundamental problem that the Plaintiff's claims belong to the chapter 7 trustee. The Plaintiff, without proper standing, is still pursuing the claims and has yet to be substituted by the chapter 7 trustee in this case."

## IV. DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but even any potential and likely causes of action. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing that "[i]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest"). However, debtors are not required to list "every 'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset disclosure form." Freedom Med., Inc. v. Gillespie, No. 06-3195, 2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal Cadillac, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the bankruptcy estate - which in a Chapter 7 case is controlled by the trustee - "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences." In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000). "While a bankruptcy case is pending, it is the trustee, and not

the debtor, who has the capacity to pursue the debtor's claims."
In re Kane, 628 F.3d at 637 (internal quotation marks and
citations omitted). Additionally, "[p]ursuant to 11 U.S.C. §
554(d), a cause of action which a debtor fails to schedule,
remains property of the estate because it was not abandoned and
not administered." Allston-Wilson v. Philadelphia Newspapers,
Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20,
2006); see also In re Kane, 628 F.3d at 637 ("an asset must be
properly scheduled in order to pass to the debtor through
abandonment under 11 U.S.C. § 554") (quoting Hutchins v. IRS, 67
F.3d 40, 43 (3d Cir. 1995)).

Judicial estoppel is a "doctrine that seeks to prevent
a litigant from asserting a position inconsistent with one that
she has previously asserted in the same or in a previous
proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,
81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and
citations omitted). At the heart of judicial estoppel is the
idea that "absent any good explanation, a party should not be
allowed to gain an advantage by litigation on one theory, and
then seek an inconsistent advantage by pursuing an incompatible
theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller &
Edward H. Cooper, Federal Practice and Procedure § 4477 (1981),
p. 782). However, this doctrine is "not intended to eliminate
all inconsistencies no matter how slight or inadvertent they may

be." Id. It "should only be applied to avoid a miscarriage of justice" and "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324 (internal quotation marks and citations omitted). The "doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362 (quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980)). "It is a fact-specific, equitable doctrine, applied at courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010).

The Third Circuit Court of Appeals has formulated this test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith - i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001)). The Third Circuit has further concluded that a "rebuttable inference of bad faith arises when averments in the

pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at 416-18); Ryan Operations, 81 F.3d at 363. However, the application of this inference does not arise "from the mere fact of nondisclosure." Ryan Operations, 81 F.3d at 364. Third Circuit precedent makes clear that a court should conduct an individualized factual assessment regarding, inter alia, knowledge and motive of the debtor surrounding disclosure of assets in a bankruptcy action. See id. at 363-64 (concluding that the inference did not apply where the creditors were most likely unaffected by the failure to disclose, the debtor received no benefit from its non-disclosure, and that there was no evidence that the debtor sought to conceal the claims deliberately); Krystal Cadillac, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

## V.    ANALYSIS[4]

### A.    Judicial Estoppel

Defendants contend that Plaintiff's asbestos claims were assets whose omission from Schedule B of the bankruptcy

---

[4] The Court previously described the law applicable to these issues in Bartel ex rel. McQueen v. Charles Kurz & Co. Inc., -- F. Supp. 3d --, No. 11-CV-30511-ER, 2015 WL 3852607 (E.D. Pa. June 22, 2015), which is equally applicable to the facts in this case.

action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiff contends that the failure to disclose the claims was a good faith mistake and that, in any event, the bankruptcy court has approved Plaintiffs' counsel to act as special counsel to the bankruptcy trustee such that there will be no concealing of a recovery from the bankruptcy trustee or a withholding of such recovery from distribution to creditors to the bankruptcy case.

i.   Step One: Has Plaintiff Taken Two Irreconcilably Inconsistent Positions?

It is undisputed that Plaintiff did not list asbestos claims (or any other legal claims) as assets in his bankruptcy filing. Plaintiff's duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. See Krystal Cadillac-Oldsmobile, 337 F.3d at 322. By failing to include his asbestos claims as an asset in his bankruptcy filings, Plaintiff initially represented to the Bankruptcy Court that such an asset did not exist. Then, in the present action, Plaintiff began pursuing those same claims that he represented did not exist. Accordingly, the two positions were irreconcilably inconsistent. See id. at 319-320. This is true despite the fact that the bankruptcy court has now been notified of the present action (by the bankruptcy trustee) and has approved Plaintiff's current counsel (The Jaques

Admiralty Law Firm) to act as special counsel to the bankruptcy
trustee.

       ii.  **Step Two: Did Plaintiff Change His Position In**
             **Bad Faith**

       It is true that Plaintiff's bankruptcy action was
filed almost two full years after his asbestos claims had been
reinstated. Importantly, however, there is no evidence in the
record that Plaintiff acted in "bad faith" or with an "intent to
play fast and loose with the court." See Krystal Cadillac, 337
F.3d at 319-20. There is nothing in the record that confirms
that Plaintiff's counsel in the asbestos action had notified
Plaintiff individually of the reinstatement of his asbestos
action (which had been pending in a state of administrative
dismissal for almost nine (9) years prior to reinstatement) upon
the Court's reinstatement of thousands of asbestos cases en
masse – or that Plaintiff's asbestos counsel was involved in or
aware of the filing of his bankruptcy action. Therefore, it is
more likely than not that Plaintiff instituted the bankruptcy
action without knowledge of the reinstatement of his previously
dismissed asbestos claims. In fact, there is some indication
that Plaintiff had no intention of concealing his claims to
"play fast and loose with the court" (i.e., that any failure to
disclose may have been a "good faith" mistake): the Order of the
bankruptcy court indicates that Plaintiff's asbestos counsel has

agreed to work with the bankruptcy trustee to represent the
interests of the bankruptcy estate (rather than dismissing the
asbestos action upon realization that approximately $74,000 is
still owed to creditors in the bankruptcy action (see ECF No.
107-2 at 13-14), who will be entitled to be paid from any
recovery Plaintiff makes in the asbestos action). Under these
circumstances, the Court finds that Defendants have failed to
point to facts that would establish a basis for concluding that
the failure to disclose the asbestos claims was in bad faith, or
an attempt to play "fast and loose" with the Bankruptcy Court.
See Krystal Cadillac, 337 F.3d at 319-20.[5] Accordingly, the Court
does not find that Plaintiff changed his position "in bad faith"
such that it warrants the application of judicial estoppel. See
Ryan Operations, 81 F.3d at 363.[6] Accordingly, Defendant's motion

---

[5]     While the Third Circuit has said that, a "rebuttable
inference of bad faith arises when averments in the pleadings
demonstrate both knowledge of a claim and a motive to conceal
that claim in the face of an affirmative duty to disclose,"
Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also
noted that an inference of bad faith does not always arise from
"the mere fact of non-disclosure." Ryan Operations, 81 F.3d at
364. Under the facts of this case, the Court need not decide
whether there was a lack of bad faith on the part of Plaintiff,
or whether the inference of bad faith was rebutted, in that in
either event, the same result is obtained.

[6]     Additionally, the Court has reviewed the bankruptcy
petition filed by Plaintiff, see ECF No. 107-2, and concludes
that, to the extent the law generally requires disclosures of
the type of potential claims that were pending at the time of
the bankruptcy filing, an omission of those claims may very well
have been based on a good faith mistake of what was required by

for summary judgment on grounds of judicial estoppel will be
denied. See Anderson, 477 U.S. at 248-50.

B.    Real Party in Interest/Standing

Defendants next contend that, despite Plaintiff's
failure to list the asbestos claims on his bankruptcy petition,
the claims now belong to the bankruptcy trustee (pursuant to 11
U.S.C. § 541(a)(1)) such that Plaintiff has no right to pursue
them. They assert that, because Plaintiff did not properly
schedule those claims as assets, the trustees were incapable of
passing those claims back to Plaintiff through abandonment of
any remaining and unpursued assets as would normally happen
pursuant to 11 U.S.C. § 554. Here, the Defendants' position has
some initial merit.

It is true that, once a debtor has filed his
bankruptcy petition, the bankruptcy estate, which is controlled
by the trustee, "encompasses everything that the debtor owns
upon filing a petition, as well as any derivative rights, such
as property interests the estate acquires after the case
commences," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000), and
that "it is the trustee, and not the debtor, who has the
capacity to pursue the debtor's claims." In re Kane, 628 F.3d at
637 (internal quotation marks and citations omitted). It is also

---

the documents, or a simple incorrect assessment of the viability
of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

true that, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action, which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." Allston-Wilson, No. 05-4056, 2006 WL 1050281, at *1; In re Kane, 628 F.3d at 637 (quoting Hutchins, 67 F.3d at 43).

In the instant case, Plaintiff may have erred by failing to disclose his asbestos claims when he filed his bankruptcy petition. While the Court has held that there is no basis for concluding that any such error was in bad faith, and thus not barred by judicial estoppel, these claims are nonetheless part of the bankruptcy estate as they were not only potential claims, but were realized claims, and thus needed to be disclosed. Under these circumstances, the claims remain part of the bankruptcy estate and the trustee remains the real party in interest for such claims, even after the bankruptcy was closed. See Killmeyer v. Oglebay Norton Co., 817 F. Supp. 2d 681, 689 (W.D. Pa. 2011) (granting the trustee's motion to substitute for the plaintiff as the real party in interest since the debtor's unscheduled pre-petition claim could only be administered by the trustee); Saellam v. Norfolk S. Corp., No. 06-123, 2007 WL 1653737, at *4 (W.D. Pa. June 6, 2007) (concluding that "[b]ecause Plaintiff's cause of action is part of the bankruptcy estate, and has not been abandoned by the trustee, I hold Plaintiff is not the real party in interest and

that only the trustee in bankruptcy, as sole representative of Plaintiff's estate, has standing to pursue the instant lawsuit"); Allston-Wilson, 2006 WL 1050281, at *1 (holding that where it was undisputed that the plaintiffs cause of action arose before her bankruptcy and that she failed to list the claim on her bankruptcy schedule, only the trustee could pursue the claim); see also Biesek v. Soo Line R. Co., 440 F.3d 410, 413-14 (7th Cir. 2006) (concluding that the trustee was the real party in interest for plaintiff's pre-bankruptcy claim which he failed to list as a bankruptcy asset and upholding the dismissal of the case since the claim did not belong to the plaintiff and the trustee had not sought to intervene).

Having held that the trustee, and not Plaintiff, is the real party in interest of the instant asbestos claims, the Court must determine the appropriate remedy. This has been made easier by the trustee's decision to utilize Plaintiff's current counsel as special counsel in the bankruptcy case (and the bankruptcy court's approval of such representation). Given that the claims belong to the estate and that, therefore, distributions of any recovery by the trustee should be made in accordance with the priorities set forth in the Bankruptcy Code, the trustee must now move this Court to substitute himself/ herself as the party-plaintiff in this case. (Of course, because Plaintiff's counsel has been approved as special counsel to the

bankruptcy trustee, such motion may be made by Plaintiff's counsel). The deadline for such motion will be identified by the Court in its Order accompanying this memorandum. In the event the motion is not timely made, Defendants may thereafter renew their motion for summary judgment on grounds that the Plaintiff is not the real party in interest/standing. At this time, however, and under these circumstances, summary judgment in favor of Defendants on grounds of the real party in interest/standing will be denied without prejudice. Anderson, 477 U.S. at 248-50.

To keep the bankruptcy court apprised of the status of the present action, the Court will direct the Clerk of this Court to create a copy of this memorandum and accompanying order to be filed on the docket of Mr. Labrache's bankruptcy case in the Bankruptcy Court for the Middle District of Florida (No. 8:11-bk-17499-KRM).

## VI. CONCLUSION

For all of the reasons stated above, Defendants' motion for summary judgment will be denied.